STATE OF SOUTH CAROLINA            )
                                   )        IN THE COURT OF COMMON PLEAS
COUNTY OF **BERKELEY**              )
                                   )
                                   )
Linda  Wilson,  individually  and  as  PR  of  )        **CIVIL ACTION COVERSHEET**
the Estate of Michael Wilson       )
                    **Plaintiff(s)**  )
                                   )        12-CP - 08 - 624
                                   )
            **vs.**                 )        *FILED*
                                   )        2012 FEB 29 AM 11:00
Berkeley County, et al             )        MARY P. BROWN
                                   )        CLERK OF COURT
                    **Defendant(s)** )        BERKELEY COUNTY SC

(Please Print)
Submitted By: **James B. Moore, III**              SC Bar #:        **74268**

Address: **232 King Street, Georgetown, SC 29440**    Telephone #:    **843-546-2408**

                                                   Fax #:          **843-546-9604**

                                                   Other:

                                                   E-mail:         **bmoore@edbelllaw.com**

**NOTE:** The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION (*Check all that apply*)
*\*If Action is Judgment/Settlement do not complete*

☒ **JURY TRIAL** demanded in complaint.        ☐ **NON-JURY TRIAL** demanded in complaint.
☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION (*Check One Box Below*)

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☐ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☒ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | Previous Notice of Intent Case # | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | 20 11 -CP- 08 - 3555 | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | ☐ Notice/ File Med Mal (230) | ☒ Personal Injury (350) | ☐ Possession (450) |
|  | ☐ Other (299) | ☒ Wrongful Death (360) | ☐ Building Code Violation (460) |
|  | 12 - CP-08-623 | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Mandamus (520) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Habeas Corpus (530) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Other (599) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
|  | ☐ Transcript Judgment (740) | ☐ Forfeiture-Petition (840) | ☐ Probate Court (940) |
|  | ☐ Lis Pendens (750) | ☐ Forfeiture—Consent Order (850) | ☐ SCDOT (950) |
|  | ☐ Transfer of Structured Settlement Payment Rights Application (760) | ☐ Other (899) | ☐ Worker's Comp (960) |
|  |  |  | ☐ Zoning Board (970) |
|  | ☐ Other (799) |  | ☐ Public Service Commission (990) |

| Special/Complex /Other |  |  | ☐ Employment Security Comm (991) |
|---|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) |  |  |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) |  | ☐ Other (999) |
| ☐ Medical (620) | ☐ Out-of State Depositions (650) |  |  |
| ☐ Other (699) | ☐ Motion to Quash Subpoena in an Out-of-County Action (660) |  |  |

SCCA / 234 (01/2011)                                                   Page 1 of 3

☐ Sexual Predator (510)

**Submitting Party Signature:** _____    **Date:** 2-29-2012

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

## FOR MANDATED ADR COUNTIES ONLY

Allendale, Anderson, Beaufort, Clarendon, Colleton, Florence, Greenville, Hampton, Horry, Jasper, Lee, Lexington, Pickens (Family Court Only), Richland, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

   a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

   b. Requests for temporary relief;

   c. Appeals

   d. Post Conviction relief matters;

   e. Contempt of Court proceedings;

   f. Forfeiture proceedings brought by governmental entities;

   g. Mortgage foreclosures; and

   h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**    **You must comply with the Supreme Court Rules regarding ADR.**
                    **Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA

COUNTY OF BERKELEY

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO.: 2012-CP-08-**624**



Linda Wilson, Individually and as the
Personal Representative of the Estate of
Michael A. Wilson,

       PLAINTIFF,

vs.

Berkeley County, Berkeley County EMS,
Berkeley County Sheriff's Office, Sheriff H.
Wayne Dewitt, individually and in his
official capacity as Sheriff of Berkeley
County, Ellen Williamson, PFC, officially
and individually; Maybank, SGT, officially
and individually; Hamlet, CPL, officially and
individually; Ellwood, PFC, officially and
individually; Biering, PFC, officially and
individually, Temisan Etikerentse, M.D.,
Paula Brodie, R.N., and Hope Clinic, LLC,

       DEFENDANTS.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**SUMMONS**

TO:  THE DEFENDANTS ABOVE NAMED:

   YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action,

a copy of which is herewith served upon you, and to serve a copy of your Answer to the said

Complaint on the subscribers at their office, P. O. Box 2590, 232 King Street, Georgetown,

South Carolina 29440 within thirty (30) days after the service hereof, exclusive of the day of

such service; and, if you fail to answer the Complaint within the time aforesaid, the Plaintiff in

this action will apply to the Court for the relief demanded in the Complaint.

1

BELL LEGAL GROUP, LLC


James Bernice Moore, III
232 King Street
Georgetown, SC 29440
843-546-2408

T. Dyllan Rankin
Law Office of T. Dyllan Rankin
39 Broad Street, Suite 209
Charleston, SC  29401

ATTORNEYS FOR PLAINTIFF

February **29**, 2012

2

STATE OF SOUTH CAROLINA

COUNTY OF BERKELEY

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO.: 2012-CP-08-

| | | |
|---|---|---|
| Linda Wilson, Individually and as the Personal Representative of the Estate of Michael A. Wilson, | ) ) ) ) | |
| | ) | |
| PLAINTIFF, | ) ) | **COMPLAINT** |
| vs. | ) ) | (Medical Malpractice / Negligence & Gross Negligence / Declaratory Judgment |
| Berkeley County, Berkeley County EMS, Berkeley County Sheriff's Office, Sheriff H. Wayne Dewitt, individually and in his official capacity as Sheriff of Berkeley County, Ellen Williamson, PFC, officially and individually; Maybank, SGT, officially and individually; Hamlet, CPL, officially and individually; Ellwood, PFC, officially and individually; Biering, PFC, officially and individually, Temisan Etikerentse, M.D., Paula Brodie, R.N., and Hope Clinic, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | / Violation of Civil Rights 42 USC 1983 and 1985 *et seq* Unreasonable and Excessive Force/ Failure to Provide Medical Care/Cruel and Unusual Punishment/Violation of Due Process) (Jury Trial Requested) |
| DEFENDANTS. | ) ) ) | |

The Plaintiff, Linda Wilson, individually and as Personal Representative of the Estate of

Michael A. Wilson complaining of the Defendants, Berkeley County, Berkeley County EMS,

Berkeley County Sheriff's Office, Sheriff H. Wayne Dewitt, Pfc. Ellen Williamson, Sgt.

Maybank, Cpl. Hamlet, Pfc. Ellwood, Pfc. Biering, Temisan Etikerentse, M.D., Paula Brodie,

R.N., and Hope Clinic, LLC would respectfully show unto this Honorable Court:

## JURISDICTION AND PARTIES

1.    The Plaintiff, Linda Wilson, is a citizen and resident of Madison County, Indiana

and is the wife of the decedent, Michael A. Wilson.  Additionally, Linda Wilson is the duly

appointed Personal Representative of the Estate of Michael A. Wilson having been so appointed by the Berkeley County Probate Court on July 8, 2011, under Case No. 2011-ES-08-424.

2.      Upon information and belief, the Defendant, The Hope Clinic, LLC (hereinafter "Hope Clinic") is a private corporation organized under the laws of South Carolina, which conducts business and provides services in Berkeley County, South Carolina, with its principal place of business located at 110 Executive Park Way, Moncks Corner, SC 29461.

3.      Plaintiff is informed and believes that the Hope Clinic entered into a contractual agreement with Berkeley County in which the Hope Clinic was to, among other things, provide medical services to inmates at the Hill-Finklea Detention Center. Specifically, the Hope Clinic was to provide a full-time registered nurse to treat inmates at Hill-Finklea and provide a part-time licensed physician to perform evaluations at Hill-Finklea at least four days a week and be available by telephone for emergency consultation. Hope Clinic was to assist in establishing training programs for Hill-Finklea employees on the proper means of: responding to health-related situations; recognizing signs and symptoms of potential emergency situations; and developing methods of obtaining assistance for inmates. Additionally, by and through it contractual relationship with Berkeley County, Hope Clinic was to maintain appropriate professional malpractice liability coverage for all personnel providing medical services.

4.      Upon information and belief, the Defendant, Temisan L. Etikerentse M.D., (hereinafter Dr. Etikerentse) is a licensed physician in South Carolina, an owner/employee of the Hope Clinic, and a South Carolina resident who provided medical services to the inmates of Hill-Finklea. At all times hereinafter mentioned in this lawsuit, Dr. Etikerense was responsible for providing medical treatment to Michael A. Wilson. During the relevant time period set forth in the complaint, Dr. Etikerentse was providing treatment as a physician to inmates at Hill-Finklea;

2

assisting in establishing training programs for Hill-Finklea employees to identify signs and symptoms of emergency medical situations and how to properly respond; and assisting in reviewing and developing policies and procedures with regard to proper health care protocol; among other things contractually agreed to.

5.    Upon information and belief, Paula Brodie, is a licensed registered nurse in the state of South Carolina, an employee of the Hope Clinic and a resident of South Carolina, and was responsible for providing medical services to inmates at Hill-Finklea, including Plaintiff, pursuant to Hill-Finklea's contractual agreement with Hope Clinic.

6.    Upon information and belief, Berkeley County is a political subdivision of the State of South Carolina as defined in Section 15-78-10 et seq. of the Code of Laws of South Carolina (1985), as amended.    At all times hereinafter mentioned in this complaint, this Defendant owned and/or operated the Hill-Finklea Detention Facility and Berkeley County EMS, and it acted or carried on its business by and through its agents, servants, and/or employees. Additionally, during the time period set out in the complaint, these employees were operating within the scope of their officially assigned and/or compensated duties.

7.    Upon information and belief, Berkeley County EMS is a governmental agency and/or political subdivision of the State of South Carolina, existing under the laws of the State of South Carolina (as defined by Section 15-78-10 of the Code of Laws of South Carolina (1985), as amended) and has facilities located in the County of Berkeley, South Carolina.    At all times hereinafter mentioned in this complaint, the Defendant, Berkeley County EMS, acted and carried on its business by and through its agents, servants, and/or employees.    Additionally, during the time period set out in the complaint, these employees were operating within the scope of their officially assigned and/or compensated duties.

3

8.    The Defendant, Berkeley County Sheriff's Office, is a governmental agency and/or political subdivision of the State of South Carolina, existing under the laws of the State of South Carolina (as defined by Section 15-78-10 of the Code of Laws of South Carolina (1985), as amended) and has facilities located in the County of Berkeley, South Carolina. At all times hereinafter mentioned in this complaint, the Defendant, Berkeley County Sheriff's Office, owned and/or operated the Hill-Finklea Detention Center and acted and carried on its business by and through its agents, servants, and/or employees. Additionally, during the time period set out in the complaint, these employees were operating within the scope of their officially assigned and/or compensated duties.

9.    Upon information and belief, H. Wayne Dewitt, is a resident of South Carolina and was Sheriff of Berkeley County during the relevant time period set forth in this complaint. As Sherriff, Dewitt was the custodian of the detention facility and responsible for, among other things: overseeing the facility; developing and implementing proper jail policies, procedures, and protocol; hiring, training, and supervising detention facility employees; and ensuring that all inmates detained in the facility were kept safe, provided adequate medical care, were free from cruel and unusual punishment, and were afforded due process.

10.    At all times mentioned in the Complaint, Sgt. Maybank, Pfc. Williamson, Cpl. Hamlet, Pfc. Ellwood, and Pfc. Biering were residents of South Carolina and employees of Berkeley County performing duties at Hill-Finklea. At all relevant times thereafter, these Defendants were acting individually as employees and/or administrators. For purposes of the claims asserted under 42 USC §1983, these Defendants are being sued in their individual capacity under the Color of State Law. Upon information and belief these Defendants either had direct contact with the Decedent, had direct knowledge of his physical condition (including the

4

need for medical care), or supervised other Defendants who had direct contact with him. These Defendants had daily contact with the Decedent and had the obligation and opportunity to secure the appropriate medical treatment.  Additionally, during the time period in question, the Decedent's Constitutional rights were well established and well known to each of these Defendants, including, and not limited to, the Decedent's right to access to appropriate medical care and to be free of excessive force.

11.    Plaintiff is informed and believes that, at present, it has not been established whether the pre-litigation filing requirements of the Medical Malpractice Reform Act of 2005 are applicable to cases involving governmental entities or charitable institutions (section 18 of the Act creates an issue as to the act under these circumstances).  However, since the incident giving rise to this cause of action occurred after the effective date of the Act, the Plaintiff herein is filing this Summons and Complaint against the Defendants, while also complying with the pre-lawsuit procedural requirements provided for by the Act, including those provided for in sections 15-79-120, 15-70-100, and 15-36-100 of the South Carolina Code of Laws.  Should the Defendants concede or stipulate (or should it be determined) that the pre-lawsuit procedural requirements are applicable to the causes of action alleged in this case, the Plaintiff agrees or concedes that the case should continue pursuant to the Notice of Intent and the applicable provisions of the Medical Malpractice Reform Act of 2005.  Additionally, if the Defendants concede that the Medical Malpractice Reform Act of 2005 does not apply to governmental entities, then the Plaintiff will agree to dismiss its Notice of Intent to Sue (filed simultaneously herewith) and proceed with this action under the above-mentioned complaint.

## FACTS

12.    The acts and occurrences which give rise to this action occurred while Michael A. Wilson (hereinafter referred to as "Michael A. Wilson, Mr. Wilson and/or the Decedent") was under the care and custody of the Defendants.

13.    On or around March 2, 2010, at approximately 2:15 p.m, Mr. Wilson arrived at the Berkley County Detention Facility a/k/a Hill Finklea (hereinafter referred to as "Hill-Finklea") after being arrested for an alleged probation violation.

14.    During the initial booking process, Mr. Wilson presented a history of requiring past detoxifications at Hill-Finklea. Additionally, the inmate medical notes provide that Mr. Wilson appeared to be shaking and reported to medical staff that it had been "too long since [he] had a drink." The Plaintiff is informed and believes that Defendant Brodie evaluated Mr. Wilson and prescribed Oxazepam, a medication used to treat alcohol withdrawal.

15.    The Hill-Finklea Inmate Chronology indicated that Mr. Wilson was booked into the Detention Center with "noted medical problems", that Defendant Brodie had "looked at I/M", and he "appeared under the influence."

16.    The Plaintiff is informed and believes that Mr. Wilson was placed in an observation cell used for detainees who have serious medical needs and who need to be observed on a constant basis through a closed circuit camera system.

17.    The Plaintiff is informed and believes that despite notice of a life threatening medical condition, the detention staff and/or medical staff failed to perform a proper and complete history, examination, and/or evaluation of Mr. Wilson during the initial intake.

18.    The Plaintiff is informed and believes that the standard of care requires that a patient experiencing alcohol withdrawal have his vital signs measured at regular intervals (every four to six hours) during the first forty-eight (48) hours upon admission to monitor increases in

6

heart rate, breathing rate, pulse, and blood pressure - symptoms consistent with a patient

regressing to fully developed delirium tremens (hereinafter referred to as "DT's").

19.    The Plaintiff is informed and believes that the Defendants failed to consider

and/or order frequent assessment or evaluations of Mr. Wilson's vital signs and/or mental status

to determine if he was developing DT's.

20.    Without being seen or examined by a physician, medical staff prescribed

Oxazepam (15 mg BID X 3 days for a last dose scheduled for March 4, 2010) without ordering

regular follow-ups to determine if the prescribed dosage was sufficient to manage Mr. Wilson's

serious and emergent medical condition.

21.    The Plaintiff is informed and believes that the dosage of Oxazepam prescribed

was insufficient to manage his alcohol withdrawal.  Additionally, the Plaintiff is informed and

believes that the prescribed dosage was not administered properly to Mr. Wilson.

22.    As a result of the Defendants' failure to ensure that proper medical care was

available and provided, Mr. Wilson regressed into fully developed DT's causing

rhabdomyolysis, renal failure, confusion, and loss of balance.

23.    The Plaintiff is informed and believes that at or around 9:23 p.m. on March 6,

2010, Defendants Maybank, Hamlet, and Williamson observed Mr. Wilson suffering from a

serious medical condition.  Mr. Wilson was behaving bizarrely.  He was seen saluting a blank

wall, and repeatedly rising and then sitting in quick succession, and otherwise exhibiting strange

behavior that warranted further investigation by Defendants Maybank, Hamlet and Williamson.

These Defendants were trained to recognize the symptoms of alcohol withdrawal, were aware

that Mr. Wilson was under medical observation, that he was suffering from a life threatening

medical condition, and consciously failed to secure the appropriate medical care.  By failing to

7

secure the appropriate medical attention, these Defendants directly contributed to the Decedent's unnecessary suffering and untimely death.

24.    At approximately 10:04 p.m., the Defendant Officers observed Mr. Wilson experience an alcohol withdrawal related seizure that resulted in a fall and a subsequent head injury. Defendant Maybank entered Mr. Wilson's cell and ordered Defendants Maybank and Williamson to contact Berkeley County EMS.

25.    The Plaintiff is informed and believes that Defendant Berkeley County EMS was contacted at approximately 10:17 p.m. As Mr. Wilson continued to experience uncontrollable seizures, Defendants Biering, Maybank, and Ellwood climbed on top of Mr. Wilson's back, cuffed his hands behind his back, shackled his legs, and used excessive force against him by smothering Mr. Wilson and kneeing him in the back, buttocks, and head.

26.    Defendant Berkeley County EMS responded at approximately 10:22 p.m. Berkeley County EMTs failed to provide an immediate assessment and evaluation of Mr. Wilson resulting in Berkeley County EMS failing to recognize for over four (4) minutes that the Mr. Wilson was *in extremis*. The Plaintiff is informed and believes that this delay contributed to Mr. Wilson's hypoxic state and was a breach of the applicable standard of care.

27.    After Mr. Wilson went eleven (11) minutes of pulseless electronic activity, Berkeley County EMS regained a pulse and had him transported to Trident Medical Center.

28.    The Plaintiff is informed and believes that during the time period Mr. Wilson was transported from Hill-Finklea to Trident Medical Center, Defendants Berkeley County and/or Berkeley County Sheriff's Office dismissed the charges filed against him in an effort to deny responsibility for his medical bills.

8

29.    At approximately 11:26 p.m., Mr. Wilson arrived at the Trident Medical Center Emergency Room.  He suffered from a severe anoxic brain injury with no chance of recovery.

30.    The Plaintiff and her family were forced to make the determination of comfort care and Mr. Wilson was removed from life support on March 14, 2010.

**FOR A FIRST CAUSE OF ACTION
AGAINST THE DEFENDANTS**
**(Negligence/Gross Negligence)**
**(Survival)**

31.    The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

32.    The Defendants are liable to the Plaintiff as a result of its negligence, gross negligence, recklessness, willfulness, and wantonness in one or more of the following particulars:

**AS TO THE DEFENDANTS SHERIFF H. WAYNE DEWITT, BERKELEY COUNTY, BERKELEY COUNTY SHERIFF'S OFFICE, BERKELEY COUNTY EMS**

33.    The Defendants were acting under the color or pretense of State law, customs, practices, usage or policy at all times mentioned herein by employing detention officers, medical personnel, supervisors or other such personnel and/or employees and had certain duties imposed upon it with regard to the Plaintiff.

34.    The above set forth incidents and the Plaintiff's resulting injuries, sufferings, and damages were proximately caused by the grossly negligent, reckless, willful and wanton acts of the employees of the Defendants (acting individually and together), in the following particulars:

     a.  In failing to properly care for the Decedent, when the Defendants and/or their personnel, agents, and/or employees knew or should have known that the Decedent was in dire need medical assistance and/or treatment;

     b.  In failing to provide reasonable, necessary, and appropriate medical attention to

9

the Decedent;

c.  In disregarding the Decedent's medical problems of severe DT's and alcohol withdrawal;

d.  In failing to monitor the Decedent, while incarcerated, and take the proper steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

e.  In failing to ensure that the Decedent was seen by a physician;

f.  In failing to refer or transport the Decedent to a specialist and/or a hospital;

g.  In failing to have a proper medical examination performed by a physician to determine the Decedent's medical needs and provide appropriate medical care and treatment;

h.  In failing to sufficiently monitor the Decedent so as to determine the severity of his condition;

i.  In failing to follow the mandates of the Minimum Standards for Local Detention Centers in South Carolina;

j.  In failing to ensure that the Hope Clinic maintained malpractice liability coverage for all personnel providing services at Hill-Finklea;

k.  In failing to terminate its contract with Hope Clinic after learning of its inadequate medical care;

l.  In failing to properly train and/or supervise its employees, agents, and/or staff, so as to ensure that detainees/inmates (including the Decedent) are provided with proper medical care and attention while incarcerated;

m.  In failing to have the proper policies and/or procedures in place regarding the administration of proper medical care;

n.  In restraining the Decedent in a prone position;

o.  If such a policy and/or procedure exists, in failing to follow the same in providing for the medical care necessary to ensure the Decedent's well-being;

p.  In failing to keep sufficient records regarding inmates so as to have a proper medical history, which would prevent repeat situations, such as the one described herein, from occurring;

q.  If such records are kept, in failing to take the time to check and/or refer to the

10

same;

r.  In failing to take the appropriate steps to provide medical care and treatment to the Decedent when they had actual and constructive notice of the Decedent's medical condition;

s.  In failing to have the proper policy and procedure in place regarding the administration of appropriate medications to inmates, including the Decedent;

t.  If said policy exists, in failing to follow same regarding the administration of appropriate medications to inmates, including the Decedent;

u.  In failing to have the proper policies and procedures in place regarding recognition of medical needs of new detainees;

v.  In failing to draft and/or institute proper policy and procedure necessary to ensure that inmates are provided basic and/or appropriate medical care and protection from abuse;

w.  If said procedures do exist, in failing to follow same;

x.  In failing to recognize that the Decedent had a serious medical condition which required immediate medical attention;

y.  In failing to comply with national, state, and local standards and guidelines with regard to the provision of medical care in detention facilities;

z.  In failing to provide and/or administer the appropriate medications (including Oxazepam) to the Decedent when doing so could have been easily accomplished;

aa. In failing to provide and/or administer appropriate physical exams in a timely manner to the detainees, including the Decedent;

bb. In failing to train their employees, agents, and/or staff to recognize the medical needs of detainees;

cc. In failing to properly respond to an emergency call/incident in a timely fashion;

dd. In failing to properly treat and/or care for the Decedent, Mr. Wilson;

ee. In failing to properly recognize the signs and symptoms of the Decedent's medical conditions;

ff. In failing to properly stabilize the Decedent's condition;

gg. In failing to provide, order, seek and/or maintain emergency medical care;

11

hh. In failing to recognize for over four minutes that the Decedent was in extremis;

ii. In failing to provide a spinal motion restriction for the Decedent, a patient with a mechanism of injury that could have resulted in a spinal cord injury;

jj. In failing to administer the resuscitation medication, epinephrine, during the decedent's cardiac arrest interval;

kk. In abandoning the Decedent when he was in desperate need of medical care; and

ll. In failing to have proper communication by and between the correctional officers and the medical personnel contracted to provide medical assistance to the detainees.

### AS TO THE DEFENDANTS TEMISAN ETIKERENTSE, M.D., PAULA BRODIE, R.N, AND HOPE CLINIC

35.    The Defendants all treated the Plaintiff during his pre-trial detention and all owed him a duty to exercise reasonable or ordinary care under the circumstances. These Defendants all deviated from the standard of care in their treatment of the Plaintiff and the Plaintiff's resulting injuries and damages were proximately caused by the negligent, grossly negligent, reckless, willful and wanton acts of the Defendants (acting individually and together) in the following particulars:

a.    In failing to properly care for the Decedent, when the Defendants and/or their personnel, agents, and/or employees knew or should have known that the Decedent was in dire need medical assistance and/or treatment;

b.    In failing to provide reasonable, necessary, and appropriate medical attention to the Decedent;

c.    In failing to maintain malpractice liability coverage for all personnel providing medical services at Hill-Finklea;

d.    In disregarding the Decedent's medical problems including a history of alcohol withdrawal and severe delirium tremens (DTs);

e.    In failing to monitor the Decedent, while incarcerated, and take the proper steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

12

f.    In failing to ensure that the Decedent was seen by a physician;

g.    In failing to refer or transport the Decedent to a specialist and/or a hospital;

h.    In failing to have a proper medical examination performed by a physician to determine the Decedent's medical needs and provide appropriate medical care and treatment;

i.    In failing to sufficiently monitor the Decedent so as to determine the severity of his condition;

j.    In failing to properly train and/or supervise its employees, agents, and/or staff so as to ensure that detainees/inmates (including the Decedent) are provided with proper medical care and attention while incarcerated;

k.    In failing to have the proper policies and/or procedures in place regarding the administration of proper medical care;

l.    If such a policy and/or procedure exists, in failing to follow the same in providing for the medical care necessary to ensure the Decedent's well-being;

m.    In failing to provide a licensed physician four days a week as agreed under the contract with Berkeley County;

n.    In failing to keep sufficient records regarding inmates so as to have a proper medical history, which would prevent repeat situations, such as the one described herein, from occurring;

o.    If such records are kept, in failing to take the time to check and/or refer to the same;

p.    In failing to take the appropriate steps to provide medical care and treatment to the Decedent when they had actual and constructive notice of the Decedent's medical condition;

q.    In failing to have the proper policy and procedure in place regarding the administration of appropriate medications to inmates, including the Decedent;

r.    If said policy exists, in failing to follow same regarding the administration of appropriate medications to inmates, including the Decedent;

s.    In failing to have the proper policies and procedures in place regarding recognition of medical needs of new detainees;

t.    In failing to draft and/or institute proper policy and procedure necessary to ensure

that inmates are provided basic and/or appropriate medical care and protection from abuse;

u.     If said procedures do exist, in failing to follow same;

v.     In failing to recognize that the Decedent had a serious medical condition which required immediate medical attention;

w.     In failing to comply with national, state, and local standards and guidelines with regard to the provision of medical care in detention facilities;

x.     In failing to provide and/or administer the appropriate medications (including Oxazepam) to the Decedent, when doing so could have been easily accomplished;

y.     In failing to provide and/or administer appropriate physical exams in a timely manner to the detainees;

z.     In failing to train their employees, agents, and/or staff to recognize the medicals needs of detainees;

aa.     In failing to properly respond to an emergency call/incident in a timely fashion;

bb.     In failing to properly recognize the signs and symptoms of the Decedent's medical conditions;

cc.     In failing to properly stabilize the Decedent's condition;

dd.     In failing to provide, order, seek, and/or maintain emergency medical care;

ee.     In failing to refer and/or bring in the proper specialist and/or medical doctor;

ff.     In abandoning the Decedent when he was in desperate need of medical care;

gg.     In failing to ensure that the appropriate diagnostic tests or lab work were ordered and carried out; and

hh.     In failing to have proper communication by and between the correctional officers, and the medical personnel contracted to provide medical assistance to the detainees.

36.     The above acts of negligence and gross breaches of the proper standard of care

(by and through the employees, agents, servants, nurses and/or physicians of these Defendants)

have caused the Decedent to suffer conscious pain and suffering, leading to his death. As such,

the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

### FOR A SECOND CAUSE OF ACTION AS TO DEFENDANTS SHERIFF H. WAYNE DEWITT, BERKELEY COUNTY, BERKELEY COUNTY EMS, BERKELEY COUNTY SHERIFF'S OFFICE, TEMISAN ETIKERENTSE, M.D., PAULA BRODIE, R.N, AND HOPE CLINIC
#### (Negligence/Gross Negligence)
#### (Wrongful Death)

37.    The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

38.    This action is brought for the wrongful death of Michael A. Wilson, pursuant to the provisions of § 15-51-10 *et seq.*, Code of Laws of South Carolina (1976, as amended), and is brought for the statutory heir(s) of Michael A. Wilson, who died on the 14th day of March, 2010..

39.    The death of the Decedent was caused and occasioned by the negligent and grossly negligent acts on behalf of the Defendants as set forth above in paragraphs (34) and (35).

40.    Prior to his death, Michael A. Wilson was forty-seven (47) years of age. By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship and have been caused great mental shock and suffering by reason of his death. They have and will forever be caused grief and sorrow by the loss of Mr. Wilson's love, society, and companionship. They have been deprived of his future experiences and judgments. They have incurred expenses for his medical, funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

a.    Loss of financial, economic support and contribution of the deceased;

b.    Extreme mental shock and suffering;

c.    Extreme wounded feelings;

d.    Tremendous grief and sorrow;

15

e.    Loss of friendship, companionship and consortium; and

f.    Deprivation of the use and comfort of the deceased's society, knowledge, judgment and experience.

41.    As a further result, and because of the Defendants' reckless, willful, and grossly negligent conduct, which ultimately caused the wrongful death of Michael A. Wilson, this Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES in an amount to be determined by a jury in accordance with the law and evidence in this case.

## FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANTS BERKELEY COUNTY AND HOPE CLINIC
### (Declaratory Judgment)

42.    That each and every allegation of fact contained above are re-alleged herein as if re-stated verbatim.

43.    The Decedent was an intended third party beneficiary of the contract by and between the Defendants Berkeley County and Hope Clinic.

44.    The Plaintiff is informed and believes that the Defendants Berkeley County and Hope Clinic breached the terms and conditions of the contract by failing to ensure Hope Clinic maintained professional malpractice liability coverage for all personnel providing medical services at Hill-Finklea.

45.    The Plaintiff is informed and believes that Defendant Hope Clinic and its medical staff to include Defendants Etikerentse and Brodie were practicing medicine without professional malpractice liability coverage.

46.    The Plaintiff is further informed and believes that the Defendants Hope Clinic, Etikerentse, and Brodie are currently insolvent and seeking bankruptcy protection.

47.    The above set forth facts show that the Defendant Berkeley County, Dewitt,

16

and/or Berkeley County Sheriff's Office dismissed the charges filed against Mr. Wilson, thereby causing Mr. Wilson's family to bare responsible all for medical bills associated with the Defendants' actions.

48.    An actual, present, and justiciable controversy has arisen between the Plaintiff and Defendants Berkeley County and Hope Clinic regarding the Plaintiff's status as a intended third party beneficiary.

49.    By this action, Plaintiff is entitled to a declaration by this Court under South Carolina Code of Laws section 15-53-10 *et seq* that:

a.    Michael A. Wilson is an intended third party beneficiary of the professional malpractice liability coverage provision under the contract by and between the Defendants Berkeley County and Hope Clinic.

b.    If the Plaintiff receives a judgment in this action against the Hope Clinic and/or any personnel providing medical services at Hill-Finklea to include but not be limited to Defendants Etikerentse and Brodie for any or all of the damages suffered by the Plaintiff, individually and as Personal Representative of the Estate of Michael Wilson and are without professional malpractice liability coverage and are financially insolvent,  that Defendant Berkeley County must satisfy the judgment awarded to the Plaintiff as a result of Defendants Hope Clinic, Etikerentse, and/or Brodie's actions or inactions.

## FOR A FOURTH CAUSE OF ACTION AGAINST THE DEFENDANTS PFC WILLIAMSON, PFC BIERING, SGT MAYBANK, PFC ELLWOOD, AND CPL HAMLET
**(Violation of Federal Civil Rights 42 U.S.C. §1983 - Violation of Due Process in failing to provide medical care for a serious medical need in violation of the Eighth and Fourteenth Amendments)**
**(Survival)**

50.    That each and every allegation of fact contained above are re-alleged herein as if

17

re-stated verbatim.

51.    During the time period in question, Defendants Williamson, Maybank, Hamlet, Ellwood, and Biering were acting under the color or pretense of state law, customs, practices, usage or policy as detention officers, supervisors, or other such personnel and/or employees, and had certain duties imposed upon them with regard to Michael A. Wilson. Additionally, during the time period in question, the Defendants were trained to recognize the symptoms of alcohol withdrawal and, were aware of Michael A. Wilson's significant medical condition and his Constitutional rights, including his right to due process and access to proper and adequate medical care.

52.    The above incidents and Michael A. Wilson's resulting injuries, conscious pain and sufferings, and ultimate death were directly and proximately caused by the intentional, reckless, willful and wanton, and deliberately indifferent acts of the Defendants, in the following particulars:

a.    In consciously failing to ensure that the Decedent received the appropriate medical care after repeatedly recognizing his physical ailments;

b.    in consciously failing to provide reasonable, necessary and appropriate medical care to the Decedent - who had a serious medical condition which was open and obvious to these Defendants who had contact with him;

c.    in consciously failing to have the appropriate medical examination performed to determine the Decedent's medical needs so as to provide the appropriate medical care and treatment;

d.    in consciously failing to sufficiently monitor the Decedent after gaining knowledge that he was severely ill to determine the severity of his condition or his need for emergent medical care;

e.    in consciously failing to provide accurate information to the receiving facilities regarding the Decedent's medical condition;

f.    in consciously failing to properly stabilize and treat the Decedent's medical condition;

18·

g.  in consciously failing to protect Michael A. Wilson from harm;

h.  in consciously failing to have the Decedent immediately transferred to the hospital when they had actual knowledge of his medical condition;

i.  in consciously failing to follow and adhere to local, state, and national standards, policies and procedures, including the policies and procedures of Hill-Finklea; and

j.  in consciously failing to call or notify medical personnel for evaluation and treatment of the Decedent, despite having actual and constructive knowledge of his medical condition, especially on March 6, 2010. During this time, the Decedent's condition was observed by or described to each of the above Defendants, and no action was taken despite the availability of a physician for phone consultation at all times.

53.    As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference- jointly and severally and in combination thereof, the Decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

54.    As a result, the Decedent suffered conscious pain, suffering, and indignity leading to the loss of his life. As such, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

### FOR A FIFTH CAUSE OF ACTION AGAINST THE DEFENDANTS PFC WILLIAMSON, PFC BIERING, SGT MAYBANK, PFC ELLWOOD, AND CPL HAMLET
**(Violation of Federal Civil Rights 42 U.S.C. §1983 - Violation of Due Process in failing to provide medical care for a serious medical need in violation of the Eighth and Fourteenth Amendments)**
**(Wrongful Death)**

55.    That each and every allegation of fact contained above are re-alleged herein as if re-stated verbatim.

56.    During the time period in question, Defendants Williamson, Maybank, Hamlet, Ellwood, and Biering were acting under the color or pretense of state law, customs, practices,

usage or policy as detention officers, supervisors, or other such personnel and/or employees, and

had certain duties imposed upon them with regard to Michael A. Wilson. Additionally, during

the time period in question, the Defendants were aware of Michael A. Wilson's significant

medical condition and his Constitutional rights, including his right to due process and access

proper and adequate medical care.

57.    Defendants' actions were consciously and deliberately indifferent to the Decedent

and Plaintiff during the time period mentioned in the facts in the following particulars:

a.  In consciously failing to ensure that the Decedent received the appropriate medical care after repeatedly recognizing his physical ailments;

b.  In consciously failing to provide reasonable, necessary and appropriate medical care to the Decedent - who had a serious medical condition which was open and obvious to these Defendants who had contact with him;

c.  In consciously failing to have the appropriate medical examination performed to determine the Decedent's medical needs so as to provide the appropriate medical care and treatment;

d.  In consciously failing to sufficiently monitor the Decedent after gaining knowledge that he was severely ill to determine the severity of his condition or his need for emergent medical care;

e.  In consciously failing to provide accurate information to the receiving facilities regarding the Decedent's medical condition;

f.  In consciously failing to properly stabilize and treat the Decedent's medical condition;

g.  In consciously failing to protect Michael A. Wilson from harm;

h.  In consciously failing to have the Decedent immediately transferred to the hospital when they had actual knowledge of his medical condition;

i.  In consciously failing to follow and adhere to local, state, and national standards, policies and procedures, including the policies and procedures of Hill-Finklea; and

j. In consciously failing to call or notify medical personnel for evaluation and treatment of the Decedent, despite having actual and constructive knowledge of his medical condition, especially on March 6, 2010. During this time, the Decedent's condition was observed by or described to each of the above Defendants, and no action was taken despite the availability of a physician for phone consultation at all times.

58.    The Defendants, jointly, severally and in combination thereof, wrongfully caused

the death of Michael A. Wilson as described by the acts and omissions described in detail herein

above.

59.    As a direct and proximate result of the consciously, deliberately indifferent, and

wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

a.  Loss of financial, economic support and contribution of the deceased;

b.  Extreme mental shock and suffering;

c.  Extreme wounded feelings;

d.  Tremendous grief and sorrow;

e.  Loss of friendship, companionship and consortium; and
f.  Deprivation of the use and comfort of the deceased's society, knowledge, judgment and experience.

60.    The Plaintiff is informed and believes that the Estate of Michael A. Wilson is

entitled to ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES against the

Defendants, pursuant to their Violation Federal Civil Rights 42 U.S.C. 1983.

### FOR A SIXTH CAUSE OF ACTION AGAINST THE DEFENDANTS PFC BIERING, SGT MAYBANK, PFC ELLWOOD, AND CPL HAMLET

**(Violation of Federal Civil Rights 42 U.S.C. 1983 –
Violation of 4th Amendment and 14th Amendments – Use of Unreasonable/Excessive Force)
(Survival)**

61.    That each and every allegation of fact contained above are re-alleged herein as if

re-stated verbatim.

21

62.    During the time period in question, Defendants Maybank, Hamlet, Ellwood, and Biering were acting under the color or pretense of state law, customs, practices, usage or policy as detention officers, supervisors, or other such personnel and/or employees, and had certain duties imposed upon them with regard to Michael A. Wilson.  Additionally, during the time period in question, the Defendants were aware of Michael A. Wilson's significant medical condition and his Constitutional rights, including his right to be free from the application and/or use of unreasonable and excessive force against his person.

63.    The Defendants' actions were consciously indifferent and deliberately indifferent to the Decedent and the Plaintiff on or around March 2, 2010 through March 6, 2010 in the following particulars:

a.    In physically restraining the Decedent, despite his serious medical condition;

b.    In consciously hitting and kneeing the Decedent who was suffering from a serious medical condition after restraining the Decedent's arms and legs by use of cuffs;

c.    In consciously failing to obtain or procure the Decedent's needed medical treatment, when the need for such was open and obvious to them, as an alternative to the excessive use force on someone suffering from alcohol withdrawal, seizures, and a significant head injury;

d.    In consciously, knowingly, and deliberately applying and/or otherwise using inappropriate and excessive force on the Decedent; and

e.    In failing to take the appropriate steps to provide medical/mental health care and treatment to the Decedent, when they had actual and/or constructive notice of the Decedent's mental health condition, without the application and/or use of excessive force.

64.    As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference- jointly and severally and in combination thereof, the Decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth

22

Amendments to the United States Constitution.

65.    As a result, the Decedent suffered conscious pain, suffering, indignity, and loss of his life. The Plaintiff, who has suffered the loss of the life of the Decedent, loss of support, mental anguish, loss of quality of life, emotional distress, incurred funeral expenses, attorney fees, lost wages, and undue grief and will likely suffer from the effects of the Defendants' actions now and in the future, demand damages from defendants, jointly and severally for actual consequential and punitive damages.

### FOR A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS PFC BIERING, SGT MAYBANK, PFC ELLWOOD, AND CPL HAMLET
#### (Violation of Federal Civil Rights 42 U.S.C. 1983 –
#### Violation of 4th Amendment – Use of Unreasonable/Excessive Force)
#### (Wrongful Death)

66.    That each and every allegation of fact contained above are re-alleged herein as if re-stated verbatim.

67.    During the time period in question, Defendants Maybank, Hamlet, Ellwood, and Biering were acting under the color or pretense of state law, customs, practices, usage or policy as detention officers, supervisors, or other such personnel and/or employees, and had certain duties imposed upon them with regard to Michael A. Wilson. Additionally, during the time period in question, the Defendants were aware of Michael A. Wilson's significant medical condition and his Constitutional rights, including his right to be free from the application and/or use of unreasonable and excessive force against his person.

68.    The Defendants' actions were consciously indifferent and deliberately indifferent to the Decedent and the Plaintiff on or around March 2, 2010 through March 6, 2010 in the following particulars:

        a.    In physically restraining the Decedent, despite his serious medical condition;

23

b.  In consciously hitting and kneeing the Decedent who was suffering from a serious medical condition after restraining the Decedent's arms and legs by use of cuffs;

c.  In consciously failing to obtain or procure the Decedent's needed medical treatment, when the need for such was open and obvious to them, as an alternative to the excessive use force on someone suffering from alcohol withdrawal, seizures, and a significant head injury;

d.  In consciously, knowingly, and deliberately applying and/or otherwise using inappropriate and excessive force on the Decedent; and

e.  In failing to take the appropriate steps to provide medical/mental health care and treatment to the Decedent, when they had actual and/or constructive notice of the Decedent's mental health condition, without the application and/or use of excessive force.

69.  As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally and in combination thereof, the Decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.  Additionally, as a direct result of the above, the Decedent suffered needlessly and ultimately died.

70.  The Defendants jointly, severally and in combination thereof, wrongfully caused the death of Michael A. Wilson by their acts and omissions as described above.

71.  As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiffs have been damaged and suffered as follows:

a.  Loss of financial economic support and contribution of the deceased;

b.  Extreme mental shock and suffering;

c.  Extreme wounded feelings;

d.  Tremendous grief and sorrow;

e.  Loss of friendship, companionship, consortium; and

24

f. Deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

72.    The Plaintiff is informed and believes that the Estate of Michael A. Wilson is entitled to ACTUAL, CONSEQUENTAL, AND PUNITIVE DAMAGES against the Defendants, pursuant to the violation of their Federal Civil Rights 42 USC 1983 – Wrongful Death.

WHEREFORE, the Plaintiff, individually, and in her fiduciary capacity as personal representative of the Estate of Michael A. Wilson, respectfully requests that the Court enter judgment according to the declaratory relieve sought, and prays judgment against all of the Defendants, both jointly and severally, for ACTUAL, CONSEQUENTIAL, and PUNITIVE damages, for the costs of this action, and for such other and further relief as the Court may deem just and proper.

BELL LEGAL GROUP, LLC

James Bernice Moore, III
Bell Legal Group, LLC
232 King Street
Georgetown, SC 29440
843-546-2408


T. Dyllan Rankin
The Law Office of T. Dyllan Rankin, LLC
39 Broad Street, Suite 209
Charleston, SC 29401
ATTORNEYS FOR THE PLAINTIFF


February 29, 2012


25